**In re TUMEN.**

No. 3735a.

District Court, D. New Jersey.

Feb. 7, 1944.

Meyer Semel, of Newark, N. J., for objecting creditor.

Tumen & Tumen, of Asbury Park, N. J., for bankrupt.

FORMAN, District Judge.

This is a petition of an objecting creditor to review a referee's order dismissing specifications of objection to a bankrupt's discharge and granting the discharge.

Fourteen specifications of objection were filed by Nathan Mesnikoff, the sole creditor of the bankrupt, as follows:

"1. Bankrupt has failed to file an accurate inventory of all of her property both real and personal, and has failed to include therein all statements concerning said property as is required by the provisions of the Bankrupt Act.

"2. Bankrupt has destroyed, mutilated, falsified, concealed and failed to keep books of account or records from which her financial condition and business transactions might be ascertained.

"3. Bankrupt has failed to explain satisfactorily any losses or assets or deficiency of assets to meet her liabilities.

"4. Bankrupt has bought and sold large amounts of real estate and has failed to account for the proceeds of same.

"5. Bankrupt has borrowed large sums of money on bond and mortgage encumbering real estate and has failed to account for the same.

"6. Bankrupt sold and conveyed the assets of two hotels together with their furnishings and equipment, in Asbury Park, New Jersey, and has failed to account for the proceeds of the same.

"7. Bankrupt conveyed a piece of real estate in Atlantic Highlands, to one, Matilda Berg, without consideration and for the purpose of cheating and defrauding her creditors.

"8. Bankrupt obtained by fraud, deceit and concealment, a mortgage loan of $8,000 from Nathan Mesnikoff, creditor herein, and executed a bond and mortgage for that amount on the 27th day of October, 1927 on the property of which she was not the lawful owner and from the proceeds thereof took her unto herself $4500.00 which she has kept and concealed in fraud of her creditors.

"9. Bankrupt on the 11th day of September, 1928, conveyed unto the Delphian Holding Company, lands and premises on the corner of First Avenue and Kingsley Street, without any consideration and in fraud of her creditors.

"10. Bankrupt and her parents conspired and schemed to keep and conceal from creditors of her parents their assets; and bankrupt together with her parents manipulated the purchase and sale of real estate and the mortgaging thereof, in which transactions bankrupt incurred the indebtedness due this creditor; and in virtue of which manipulations this creditor was defrauded out of the sum of Eight Thousand ($8,000.) Dollars.

"11. Bankrupt was, on or before the 5th day of March, 1942, the owner of household furnishings, and effects of the value of $5000.00. On or about the 5th day of March, 1942, bankrupt conveyed and transferred said household furnishings and effects unto her husband, Jonas Tumen, in fraud of creditors and to take said property out of the reach of the creditors.

"12. Bankrupt keeps and conceals furniture and household effects of the value of $3500.00 from creditors, which household furnishings and effects are her property and part of her estate.

"13. Bankrupt caused to be sold $1500.-00 worth of furniture through the medium of her husband, Jonas Tumen, as her alter-ego and keeps and conceals the said monies in the said possession of Jonas Tumen her husband, in fraud of her creditors.

"14. Bankrupt has concealed or permitted to be concealed portions of her furnishings and household effects, or the cash realized from the sale of said furnishing and household effects, with intent to hinder, delay or defraud her creditors."

The bankrupt filed a voluntary petition in the District of New Jersey on August 17, 1942. She listed as her only liability a judgment taken by the said Mesnikoff against her, based upon a deficiency resulting from a mortgage bond which she gave him. She also scheduled nominal assets in the sum of $25.

■■■ Specifications of objection to discharge are pleadings and must allege certain positive and specific facts. These facts should be essential elements which constitute the bar to the discharge. In re Ruhlman, 2 Cir., 279 F. 250; In re McLaughlin, D.C., 4 F.Supp. 107; In re Wood, D. C., 283 F. 565; In re Servis, D. C., 140 F. 222. Specifications numbered 1 and 3 fail in these respects.

Specification No. 2 deals with the failure of the bankrupt to keep books of account or records.[1] The questions of destruction, mutilation, falsification and concealment of books of account or records, raised in the specification, are not pursued

---

[1] Section 14, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, as amended, provides as follows:

"The court shall grant the discharge unless satisfied that the bankrupt has * * (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case; * * * Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision c, would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

by the objecting creditor and need not be considered. The bankrupt testified that she was a "dummy" in several real estate transactions which took place approximately twenty years ago, at which time she was a minor and did not know anything about them. At that time her mother and father conveyed various properties to her. These properties were lost either by foreclosure of mortgages or by sale for taxes. The bankrupt neither gave nor received any consideration for such conveyances. She claims that all of these properties in fact belonged to her parents, who handled all matters with respect to them, and that she was never told anything concerning them, although upon occasion it was necessary for her to sign certain papers. The bankrupt's father corroborated her testimony and stated that he used his daughter's name in these transactions because he was protecting himself against possible judgments.

In 1927 bankrupt gave a bond and mortgage to the objecting creditor, Nathan Mesnikoff, in the sum of $8000, the proceeds of which, less a bonus, were received by her father. The bankrupt admitted that she received $4500 of this money and put it into other property which was subsequently lost when it was sold for taxes. Later Mesnikoff reduced the deficiency obligation on this mortgage to a judgment against her, as scheduled by the bankrupt. The bankrupt, herself, never engaged in any business and at the time of most of these transactions was working as a copyist in New York City. At about the time she received the sum of $4500 she married a lawyer in Asbury Park, New Jersey, and after her marriage she performed the duties of a housewife and was in nowise associated with her husband in his business or in any of his real estate transactions except to execute such papers as required her signature as his wife.

■ It is obvious that the bankrupt had no such control over the properties in question as to require her to keep books. The circumstances of the transactions, which occurred many years ago, were plausibly related by the bankrupt and her father. The facts of the case are sufficient to warrant the referee's conclusion that the failure of the bankrupt to keep books of account or records was justified and that specification No. 2 should be dismissed.

■ Specifications Nos. 4, 5, and 6 concern the real estate transactions referred to above and charge the bankrupt with failing to account for the proceeds of them. The explanation of the bankrupt that she was ignorant of these transactions and that the properties did not actually belong to her is sufficient. Her father could not remember the details, but asserted and reasserted that whatever money was received as a result of transfer or mortgage was paid to him or his wife and was subsequently lost in other real estate. He insisted that the bankrupt received none of this money and knew nothing of the transactions. Under the facts as stated, and in view of the length of time that has elapsed, these explanations are adequate, there being no evidence to the contrary. The referee was correct in dismissing these specifications.

■ Specifications Nos. 7, 8, 9, and 10 charge the bankrupt with conveyances for the purpose of defrauding her creditors. In view of the lapse of time, the explanation given by the bankrupt that she had nothing to do with these conveyances and the testimony of her father that, if such conveyances were made, no consideration was obtained for them by the bankrupt, satisfactorily rebut any inference that the conveyances were in fraud of creditors. One of the transferees was a stenographer in the law offices of the bankrupt's husband, and another was a company composed of members of the bankrupt's family. Bankrupt testified that in both transactions hers was only a "straw" participation, and there is no reason to doubt her. Inferences alone cannot be the basis for refusing a discharge in bankruptcy, particularly where there is no evidence to support the inferences and reasonable explanations are given. The dismissal of specifications Nos. 7, 8, 9, and 10 by the referee was proper.

■ The remaining specifications, Nos. 11 to 14, inclusive, charge the transfer of household furnishings and furniture in fraud of creditors. It appears that an insurance policy in the name of the bankrupt, issued on August 15, 1940, covers the furniture in the amount of $5000. This policy was changed to the name of the bankrupt's husband on March 5, 1942. The personal property and furniture of the bankrupt was admittedly later sold by the bankrupt's husband for $1550. The bankrupt testified that she knew nothing of the policy or the changes made in it, and that she never owned the furniture or received anything from its sale. There being no other evi-

dence in the record, any inferences that may be drawn from the insurance policy naming the insured as owner of the furniture cannot possibly, standing alone, serve as a basis for binding her to the ownership of the furniture and denying her discharge in bankruptcy. Her testimony with respect to it, in the light of the other evidence in the record consistent with her statement, is sufficient, and the dismissal of specifications Nos. 11, 12, 13, and 14 by the referee was justified.

■ The facts recited above appear in the record and have been found by the referee. Findings by a referee in bankruptcy on questions of fact should not be disturbed unless clearly and manifestly erroneous. He is in a position to observe the demeanor of the witnesses and better able to judge the weight that should be given to their testimony. Federal Rules of Civil Procedure, rule 53(e) (2), 28 U.S.C.A. following section 723c; 7 Remington, Bankruptcy (5th Ed., 1939), § 3406, and cases cited therein.

The order of the referee dismissing the specifications of objection and granting the discharge of the bankrupt is affirmed.